## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: Wilmington Trust Co., | ) | CASE NO.   4:05 CV 2600 |
| as Successor Indenture Trustee, | ) | |
| and Other Members of the Ad Hoc | ) | JUDGE PETER C. ECONOMUS |
| Unofficial Committee of Noteholders, | ) | |
| | ) | |
| PETITIONERS. | ) | |
| | ) | MEMORANDUM OPINION |
| | ) | AND ORDER |
| | ) | |
| | ) | |

This matter is before the Court upon the Secured Noteholders' Petition for a Writ of
Mandamus (Dkt. #4) and the Court's Order to Show Cause (Dkt. #19).

## I. PROCEDURAL BACKGROUND

The Petitioner in the above noted matter is Wilmington Trust Company, as successor
indenture trustee for $300 million principal amount of 10% Senior Secured Notes secured
by substantially all of WCI Steel, Inc.'s (the "Debtors") real property, plant and equipment
and institutions listed in a filing with the Bankruptcy Court under Bankruptcy Rule 2019
on October 31, 2005 (collectively with the indenture trustee, the "Secured Noteholders"").
The Secured Noteholders filed a petition for a writ of mandamus pursuant to 28 U.S.C. §
1651(a) on November 4, 2005 seeking the issuance of such writ to the United States

Dockets.Justia.com

Bankruptcy Court for the Northern District of Ohio (the "Petition").  <u>See</u> (Dkt. # 4).

Specifically, the Secured Noteholders requested that the writ of mandamus "require the

Bankruptcy Court, consistent with its own rulings, to order the production of certain

documents by the Renco Group Inc.[1]" (Dkt. # 4 at 1.)  The Secured Noteholders further

requested that this Court schedule an expedited hearing regarding the matter.  <u>See</u> (Dkt. #

8).  The Court granted the request for an expedited hearing and scheduled a hearing to be

held on November 9, 2005.  <u>See</u> (Dkt. # 6).

Renco, thereafter, filed a motion to continue the hearing until a date no sooner than

November 16, 2005.  <u>See</u> (Dkt. # 13).  In said motion, Renco asserted the following: (1) the

petition for a writ of mandamus was a "disguised motion for leave to appeal an

interlocutory discovery order", (Dkt. # 13 ¶2); (2) the expedited schedule failed to afford

the Bankruptcy Court and other interested parties a reasonable time in which to respond to

the Petition, <u>see</u> (Dkt. # 13 ¶¶ 3, 5–7; and (3) no emergency existed as the confirmation

proceedings at issue were scheduled to be held November 14-November 22, 2005, <u>see</u> (Dkt.

# 13 ¶¶ 4, 9).  Additionally, several debtors in the bankruptcy proceedings filed objections

to the expedited schedule and noted the Secured Noteholders' failure to attempt service of

the Petition.[2]  <u>See</u> (Dkt. # 14).  The Secured Noteholders filed a memorandum in opposition

to the motion to continue therein restating their request for an expedited hearing.  <u>See</u> (Dkt.

---

[1]The Court hereinafter shall refer to The Renco Group Inc. as "Renco."

[2]The debtors were as follows:WCI Steel, Inc., WCI Production Services, Inc., WCI Metallurgical Services, Inc., WCI Sales, L.P., Youngstown Sinter Company and Niles Properties, Inc.  The Secured Noteholders immediately effectuated service on said debtors. <u>See</u> (Dkt. # 15).

# 18).

Upon review of the Petition, Renco's motion to continue, as well as other pertinent filings and exhibits presented in the record, the Court questioned whether it had subject matter jurisdiction.  See In re: Pappas & Rose, P.C., 229 B.R. 815 (W.D. Okla. 1998) (finding that 28 U.S.C. § 1651(a) does not authorize the district court to issue a writ of mandamus arising from a bankruptcy proceeding absent another statutory basis for jurisdiction); but see Midland Mut. Life Ins. Co. v. Sellers, 101 B.R. 921, 926-29 (S.D. Ohio) (examining petition for a writ of mandamus arising from bankruptcy proceeding without addressing jurisdictional question).  Consequently, the Court ordered the Secured Noteholders to show cause as to the propriety of subject matter jurisdiction.  See (Dkt. # 19).

In support of their Petition and in response to the show cause order, the Secured Noteholders advanced three jurisdictional bases:

> (1) to remedy through a writ of mandamus the institutional damage to these bankruptcy proceedings caused by Renco's coercion of the Bankruptcy Court into abandoning its actual merits ruling regarding the production of the [Pension Benefit Guaranty Corporation] Filings; (2) to correct, through mandamus, a clear abuse of the Bankruptcy Court's discretion, to the extent that its failure to order production of the documents is viewed as a ruling on the merits of the discovery dispute; and (3) as a discretionary appeal to resolve an important and controlling question of law that may materially advance resolution of the proceedings below.

(Dkt. # 23 at 1.)  Additionally, the Secured Noteholders alleged that "the question of the Court's 'jurisdiction' . . . merges to a large extent with the merits of mandamus review." (Dkt. # 23 at 1–2) (citing Lindsey v. Dow Chem. Corp. (In re: Dow Corning Corp.), 113

F.3d 565, 569-70 (6th Cir. 1997)).

In light of the Secured Noteholders' request for expedited review of their Petition and the Court's opportunity to review the entirety of the record through the lens of the Secured Noteholders' response to the order to show cause, the Court finds that the Secured Noteholders are unable to present any set of facts demonstrating the requisite preconditions for mandamus relief: (1) demonstration that the right to issuance of the writ is clear and indisputable; and (2) demonstration that no other adequate means to attain the desired relief exist. See <u>Allied Chame. Corp. v. Daiflon, Inc.</u>, 449 U.S. 33, 35 (1980) and discussion *infra*.

## II. ALLEGED FACTS

The Secured Noteholders attach to their Petition a declaration, <u>see</u> (Dkt. #5, Declaration of Thomas H. Moreland ("Moreland Declaration")), as well as a series of exhibits, <u>see</u> (Dkt. #5, Exs. A–L)[3] setting forth the following facts.

In early September 2005 the Secured Noteholders issued a document request seeking *inter alia* all filings made by Renco with the Pension Benefit and Guarantee Corporation ("PBGC") since the petition date in the bankruptcy proceeding (the "PBGC Filings"). <u>See</u> (Moreland Declaration ¶ 17). Renco objected to this document request and various discussions as well as court conferences failed to produce an agreement on this issue. <u>See</u> (Id. ¶ 20). On October 14, the Bankruptcy Court heard argument on this discovery dispute

---

[3]The Court sealed all exhibits attached to the Secured Noteholders' Petition for Writ of Mandamus. <u>See</u> (Dkt. #3).

*in camera* and requested that Renco and the Secured Noteholders brief the dispute.  See (Id. ¶ 21).  The Bankruptcy Court reviewed the submitted briefs and on October 21 conducted a teleconference[4] among the parties discussing the parties' briefs.  See (Id. ¶ 22).  During the conference the Bankruptcy Court instructed[5] Renco to produce its PBGC Filings and expressed its determination to protect the confidentiality of the PBGC Filings through entry of an appropriate protective order.  See (Id.).  The Bankruptcy Court then requested that the parties submit a proposed protective order.  See (Id. ¶¶ 22–25).

Between October 24 and 27 the parties held numerous discussions regarding the drafting of a protective order.  See (Moreland Declaration ¶¶ 30–39).  The Secured Noteholders ultimately crafted a proposed Protective Order based on the October 21 telephone conference and related negotiations conducted from October 24 to 27 (the "Proposed Protective Order").  See (Dkt. #5, Ex. A).  The Proposed Protective Order contained language directing Renco to produce all of the PBGC Filings.  See (Id.).   Late in the evening of October 27, Michael Ryan, counsel for Renco, contacted the Secured Noteholders and announced the intent of Renco to withdraw its confirmation plan rather than produce the PBGC Filings.  See (Id. ¶ 31).

On the next day, Mr. Ryan sent a letter to the Bankruptcy Court intended to "clarify

_____

[4]No record of the teleconference was taken or minutes docketed.  (Moreland Declaration ¶ 22).

[5]The Secured Noteholders repeatedly refers to the Bankruptcy Court's actions during the October 21 conference as a "ruling."  The Court shall discuss *infra* the import of the Bankruptcy Court's actions during the conference.

some evident miscommunication that may have been created as a result of [the] informal

oral presentations and written submission regarding…the willingness of Renco to provide

the financial information [the Bankruptcy Court] has indicated would be relevant to the

confirmation process." <u>See</u> (Dkt. #5, Ex. L).  Further telephone conferences conducted on

October 28 failed to achieve an agreement as to the production of the PBGC Filings.  <u>See</u>

(Moreland Declaration ¶¶ 32–34).  Renco repeated it would withdraw its confirmation plan

if required to produce the PBGC Filings.  <u>See</u> (Id. ¶ 34).

The Bankruptcy Court ultimately concluded that the parties had failed to reach an

agreement on the production of the PBGC Filings.  <u>See</u> (Dkt. #5, Ex. B).  In an Order dated

October 28, 2005 regarding the Secured Noteholders' original request for the production

of documents, the Bankruptcy Court stated:

> The Noteholders seek production of Renco's filings with the PBGC.  The
> Court believed that the parties had reached an agreement with respect to
> Renco's production of the financial information requested (i.e. the
> information previously produced to the PBGC).  In the process of
> memorializing the parties' agreement, it became clear that the parties had not
> reached an agreement.

(Id.).  The Bankruptcy Court then ordered that "given the lack of an agreement, and based

on the Court's review of the briefs submitted by the parties," Renco must only produce a

"written identification of all Renco balance sheet liabilities, known contingencies, pending

litigation and the bottom line net worth figure for Renco."  <u>See</u> (Id.).  The Bankruptcy

Court's accompanying Protective Order, also issued on October 28, modified the terms of

the Secured Noteholders Proposed Protective Order and eliminated references to the PBGC

Filings.  See (Dkt. #5, Ex. C).

On October 31, Renco produced information responsive to the October 28 order. See (Dkt. #5, Ex. M).  In a conference call held on October 31, the Bankruptcy Court recognized that Renco had failed to produce a "bottom line net worth figure."  See (Moreland Declaration ¶ 41). The Bankruptcy Court held another telephone conference on November 1.  See (Id.).  Renco again announced that it would withdraw its confirmation plan were it required to produce anything beyond that which it had already produced.  Id. The Bankruptcy Court did not require any further disclosures by Renco.  See (Id. ¶ 42). Instead, it assured the Secured Noteholders that Renco would not be able to proffer any information it had not yet disclosed and that the Secured Noteholders could, during the confirmation hearing, make evidentiary arguments regarding Renco's failure to provide the PBGC filings.  (Dkt. #18, Ex. A).

The Petition ensued.

## III.  ANALYSIS

The remedy of mandamus is an extreme one, to be used only in extraordinary situations.  Kerr v. United States District Court, 426 U.S. 394, 402 (1976); accord In re Lott, 424 F.3d 446, 449 (6th Cir. 2005).  It is available only when no other adequate means of relief is available.  Allied Chemical Corp., 449 U.S. at 35.  "Only exceptional circumstances, amounting to a judicial usurpation of power, will justify the invocation of this extraordinary remedy."  Id.  Moreover, writ of mandamus petitions "may not be used in the federal courts as a substitute for readily available appeal procedure."  National City

Bank v. Battisti, 581 F.2d 565, 568–69 (6th Cir. 1977).

To insure that a writ of mandamus is issued only in such extraordinary circumstances, the party seeking the writ must first satisfy two conditions. First, the party seeking the writ must "have no other adequate means to attain the relief he desires." Allied Chemical Corp., 449 U.S. at 35 (citing Kerr, 426 U.S. at 403); Roche v. Evaporated Milk Association, 319 U.S. 21, 26 (1943)). Second, the petitioner must "satisfy the burden of showing that [his] right to issuance of the writ is clear and indisputable." Id. (citing Bankers Life & Cas. Co. v. Holland, 346 U.S. 379, 384 (1953)) (internal quotations omitted). See also In re Post-Newsweek Stations, Michigan Inc., 722 F.2d 325, 329 (6th Cir.1983). The Secured Noteholders' Petition fails both these requirements.

The Secured Noteholders' Petition seeks enforcement of an October 21 "ruling" by the Bankruptcy Court directing that Renco produce PBGC Filings relevant to the Chapter 11 confirmation hearing process. See (Dkt. #5 at 2, 5; Dkt. #23 at 4). A review, however, of the filings submitted by the Secured Noteholders in support of their Petition (Dkt. #5), in response to Renco's motion to continue (Dkt. #18), and in response to the Court's show cause order (Dkt. #23), fails to provide reference to an order of the Bankruptcy Court on October 21, 2005. The October 21 "ruling" was the result of a conference call for which there is no transcript or record. See (Moreland Declaration ¶ 22). Therefore, the undisputed facts reveal that the "ruling" the Secured Noteholders seek to enforce—namely, the Bankruptcy Court's determination during a telephone conference of October 21, 2005 regarding discovery—neither was memorialized by written order nor entered into the

record.  Accordingly, the October 21, 2005 determination is without legal significance.  See Swift v. Fruehauf, 801 F.2d 838, 839 n.3 (6th Cir. 1986) (citing Goldman v. Commissioner, 388 F.2d 476 (6th Cir.1967); United States v. Eisner, 329 F.2d 410 (6th Cir.1964)).

Additionally, the undisputed facts reveal that the Bankruptcy Court changed its October 21, 2005 determination, because it recognized that the determination was based on the erroneous assumption that the parties had reached an agreement regarding the challenged discovery.  Upon receiving a letter from Renco's counsel indicating that Renco did not agree to provide the discovery, the Bankruptcy Court issued a written order, finding that despite its previous "beli[ef] that the parties had reached an agreement with respect to [the PBGC Filings]…it became clear that the parties had not reached an agreement."  (Dkt. #5, Ex. B).  The Bankruptcy Court then issued a Protective Order omitting inclusion of the Secured Noteholders' proposed PBGC Filings requirement.  Therefore, the October 28 Order and Protective Order conclusively demonstrate that the Bankruptcy Court changed its October 21, 2005 determination based on the parties' failure to reach an agreement—as opposed to the "threats," "coercion" or "extortion" alleged by the Secured Noteholders.  See United States v. Zipkin, 729 F.2d 384, 389 (6th Cir. 1984) ("An order entered by a judge should speak for itself and not be varied by parol testimony as to what was meant by its provisions."); see also Bright v. Westmoreland County, 380 F.3d 729, 739 (3d Cir. 2004) ("Judicial opinions are the core work-product of judges. . . . They are tangible proof to the litigants that the judge actively wrestled with their claims and arguments and made a scholarly decision based on his or her own reason and logic.").

Next, the Secured Noteholders, in their Response to the Renco Group's Motion to Continue, attach a transcript excerpt of the November 1 conference which they allege evidences the Bankruptcy's Court's refusal to enforce its prior discovery "ruling."  See (Dkt. #18, Ex. A, ("Nov. 1 Transcript")).  The Court's review of this transcript excerpt, however, fails to reveal any modification by the Bankruptcy Court of a prior discovery determination.  Instead, it demonstrates that the Bankruptcy Court recognized the potential difficulties created by Renco's changed positions regarding discovery.  The Bankruptcy Court explicitly advised the Secured Noteholders that Renco, during the confirmation hearing, would "not be permitted to proffer into evidence information that has been sought by the [Secured] Noteholders and which [Renco has] declined to provide."  See (Id. at 36).  The Bankruptcy Court added that the Secured Noteholders would "be entitled to whatever—whatever evidentiary arguments may be available…in light of the failure to produce the discovery that [the Secured Noteholders] requested."  See (Id. at 39).

In light of this discussion by the Bankruptcy Court during the November 1 conference, the Court finds that the Secured Noteholders' Petition is anticipatory and premature.  It appears the Bankruptcy Court has not yet ruled on Renco's compliance with any discovery orders and will further address Renco's compliance and the consequences of Renco's compliance during the confirmation hearings.  Indeed, the Bankruptcy Court's recognition of potential prejudice—and apparent willingness to address the same during the conformation hearing—patently demonstrates the impropriety of issuing the extraordinary writ.

10

The Court, therefore, concludes that, in so far as the Secured Noteholders request enforcement of a October 21 ruling, no ruling or court order exists to which a clear and indisputable right to the issuance of a writ of mandamus applies.  See Allied Chemical Corp., 449 U.S. at 35.  Accordingly, the Secured Noteholder's Petition fails to assert factual allegations demonstrating one of the two mandamus requirements: the burden of showing a "clear and indisputable right to such a writ.  Id.

Assuming *arguendo* that the Secured Noteholders could present any evidence demonstrating that Renco's alleged "threats," "coercion" or "extortion" impacted the Bankruptcy Court's orders, it is undisputed that the Secured Noteholders may pursue an appeal following the confirmation hearing.  The Secured Noteholders repeatedly have acknowledged that the Bankruptcy Court's "failure to order this discovery would be reversible error on appeal of any order confirming the Debtor/Renco Plan."  See (Dkt. # 18 ¶ 5.)  Consequently, it is beyond cavil that the Secured Noteholders have alternative avenues to preserve their rights; they have both the remedy of addressing the discovery issue during the confirmation hearing and of appealing any resulting confirmation order.  Accordingly, the Secured Noteholders' Petition fails to assert factual allegations demonstrating the other mandamus requirement: that the party seeking the writ must "have no other adequate means to attain the relief he desires."  Allied Chemical Corp., 449 U.S. at 35.

In summation, the Bankruptcy Court's record evidences no October 21 order or ruling for which the Court could mandate enforcement.  Moreover, the plain language of

11

the Bankruptcy Court's discovery order establishes that it changed its determination regarding the PBGC filings based on a failure by the parties to reach an agreement, not on "coercion" or "extortion." Thus, the Secured Noteholders, in regards to enforcement of the October 21 ruling fail to satisfy the burden of showing a clear and indisputable right to issuance of a writ of mandamus. See Allied Chemical Corp., 449 U.S. at 35. In addition, the November 1 conference held by the Bankruptcy Court demonstrates no coerced modification of any discovery order issued by the Bankruptcy Court. Even if the Secured Noteholders could present evidence demonstrating Renco's "coercion" impacted the Bankruptcy Court's orders, the Secured Noteholders have "other adequate means" by which to attain their desired relief.[6] See id.

## IV. CONCLUSION

Accordingly, for the reasons presented *supra* and discussed herein, the Court finds that the Secured Noteholders have failed to present any set of facts demonstrating that exercise of mandamus jurisdiction is proper. Therefore, the Court hereby orders that the

---

[6]The Court notes that the Secured Noteholders present a third argument for jurisdiction—that the Court may in its discretion treat the Petition as a motion for leave for an interlocutory appeal pursuant to 28 U.S.C. § 158(a)(3). The Court, at this time, declines to exercise such discretion. As discussed *supra*, review of any discovery order by the Bankruptcy Court is premature. It appears that completion of the confirmation hearing will better demonstrate the extent to which the PBGC Filings issue is a "controlling issue of law" as well as to what extent "an immediate appeal must materially advance the ultimate termination of the litigation." See In re M.T.G., Inc., 298 B.R. 310, 314 (E.D. Mich. 2003) (citing Cardwell v. Chesapeake & Ohio Ry. Co., 504 F.2d 444, 446 (6th Cir. 1974)) (discussing the elements a court must address in exercising discretion to entertain an interlocutory appeal from a bankruptcy court).

Secured Noteholders Petition for a Writ of Mandamus, (Dkt. #4), is **DENIED**.


**IT IS SO ORDERED.**

 /s/ *Peter C. Economus* – **11/10/05**
**PETER C. ECONOMUS**
**UNITED STATES DISTRICT JUDGE**